IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WILLIE MURPHY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-061 |
| | ) | |
| TIMOTHY WARD, Commissioner, and | ) | |
| JERMAINE WHITE, Warden, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.     **BACKGROUND**

Plaintiff names the following defendants: (1) Timothy Ward, Commissioner of the Georgia Department of Corrections ("DOC"), and (2) Jermaine White, TSP Warden. (Doc. no. 5, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 21, 2022, Plaintiff became dizzy and fainted in a TSP dormitory, resulting in an injury to his right foot. (Id. at 5.) Plaintiff's foot was swollen, and he told a nurse and the correctional officers working that day that because of the pain, he thought his foot was

broken.  (Id.)  They told him "it was nothing major."  (Id.)  Plaintiff filled out a sick call form, but he was not seen by a doctor until three weeks after his injury occurred.  (Id.)

A prison doctor referred Plaintiff for x-rays, which showed a broken right tibia that had already begun healing.  (Id.)  The bone was healing incorrectly because of the lack of timely treatment, and as a result, Plaintiff still experiences a throbbing pain in his foot.  (Id.)  The doctor told Plaintiff his medical emergency should have been treated immediately.  (Id.)  Plaintiff filed a grievance regarding his medical treatment, as well as a medical complaint, but he had not received a response after waiting four weeks.  (Id. at 3.)

Plaintiff seeks $250,000 in damages, an order directing prison officials to provide Plaintiff with additional treatment and orthopedic rehabilitation by a doctor outside of the prison, and a notification to the clemency division of the parole board about his situation so that he will be granted a medical reprieve.  (Id. at 6.)

## II. DISCUSSION

### A. Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the

allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

    **B.**    **Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies**

        **1.**    **The Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per

*curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

### 2. Administrative Grievance Procedure at TSP

The administrative grievance procedure is governed by the version of the Georgia DOC Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1] The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-

---

[1] DOC policies cited herein are publicly available on the DOC web site. See www.dcor.state.ga.us; *follow* link for Policies & Procedures and then Facilities Division; *click on* link for desired PN (last visited Aug. 24, 2022).

grievable issues, includes threats or insults, or raises more than one issue/incident.  Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### 3. Plaintiff's Failure to Exhaust

In his amended complaint, dated April 11, 2022, Plaintiff states he filed a grievance but had not received a response after four weeks.[2]  Having failed to receive a response to his

---

[2] Plaintiff commenced this case with an original complaint dated May 12, 2022.  (See doc. no. 1-1, p. 8.)  He then filed an amended complaint as of right, dated April 11, 2022.  (See doc. no. 5, p. 7.)  The date of the notary's signature on both documents is May 12, 2022.  The discrepancy need not delay the Court, however, because in both pleadings, Plaintiff states he did not receive a response four weeks after filing his grievance.  (Doc. no. 1-1, p. 4; doc. no. 5, p. 3.)

6

original grievance in less than the allotted forty for the Warden to respond, Plaintiff executed and filed his pleading that launched this case. Furthermore, the face of Plaintiff's pleading makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit. That is, Plaintiff improperly short-circuited the grievance process not only by filing his lawsuit prior to the expiration of the time allowed for the Warden to respond, but also because he did not file an appeal, even if the time for the Warden to respond to the original grievance had expired.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not waiting for a response to his original grievance or filing an appeal of any unsatisfactory response would defeat the aims of PLRA to review the

merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's amended complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not wait for a response to his original grievance, let alone file a central office appeal regarding any potential mishandling of the original grievance.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the amended complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

### C. Even if Plaintiff Had Exhausted His Administrative Remedies, He Fails to State a Claim Upon which Relief Can Be Granted Against the Two Named Defendants

For the sake of completeness, the Court notes Plaintiff never mentions in his statement of claim the two individuals named as Defendants. The Eleventh Circuit has held that a district

8

court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). At best, Plaintiff implies Defendant Ward is the head of the DOC, of which TSP is a part, and Defendant White is the Warden at the institution where Plaintiff allegedly received improper medical care.

However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*).  Plaintiff provides no information to suggest the named Defendants had anything to do with his medical treatment, or that there is a causal connection between their individual actions and the alleged constitutional violation; thus he fails to state a valid claim against them. See Rosa, 522 F. App'x at 714; Hartley, 193 F.3d at 1269.  Moreover, courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the decisions of trained medical practitioners regarding care provided to inmates.  See Williams v. Limestone Cnty., Ala., 198 F. App'x 893, 897-98 (11th Cir. 2006) (*per curiam*); Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), *adopted by* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.).

Finally, Plaintiff has not alleged a causal connection between either Defendant and the alleged constitutional violation because he has not alleged "a history of widespread abuse put[ting] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). Nor has Plaintiff alleged "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). Thus, even if Plaintiff had exhausted his administrative remedies prior to filing this lawsuit, he fails to state a claim upon which relief can be granted against the two named Defendants.

### III. CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** without prejudice and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 24th day of August, 2022, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA